UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **CATHERINE M. BERNARD, ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 14-887** |
| **JOSEPH GREFER, ET AL.** | **SECTION "L" (2)** |

## ORDER & REASONS

### I. BACKGROUND

This case arises out of alleged personal injuries and property damages that resulted from alleged exposure to naturally occurring radioactive material ("NORM"), also known as technologically enhanced radioactive materials ("TERM"), as part of oil operations by various pipe-cleaning defendants. In addition to the pipe-cleaning defendants, Plaintiffs name the landowners who owned the land upon which the pipe-cleaning operations were conducted and oil companies as defendants. The Petition asserts claims by approximately 465 Plaintiffs who originally filed their claims in the Civil District of Orleans Parish on March 5, 2014. Defendant Transco Exploration Co. removed this case to federal court pursuant to the Class Action Fairness Act. (Rec. Doc. 1).

The Petitioners are all present or former residents of Jefferson Parish and have all, at some point, worked or lived in the area near "Grefer Tract,"[1] the land at issue. (Rec. Doc. 1-1 at 9). From 1953 until 1992, the property was leased to clean, maintain, and repair used oil field pipes and equipment. (Rec. Doc. 1-1 at 9). Plaintiffs allege that the "oil field equipment and pipes were and continue to be contaminated with highly toxic materials, hazardous, carcinogenic, and poisonous" and that this contaminated the Grefer Tract. (Rec. Doc. 1-1 at 10). Plaintiffs

---

[1] The "Grefer Tract" refers to 33 acres of industrial property owned by the Grefer Family.

contend that the property contamination also contaminated the air, land, ground water, top soil, subsoils, food, neighborhoods, and that "petitioners have become infested with these highly toxic hazardous chemicals, toxicants, and pollutants." (Rec. Doc. 1-1 at 10). Plaintiffs allege that at all times, Defendants knew or should have known that the oil pipes were contaminated. (Rec. Doc. 1-1 at 11). Plaintiffs allege that the contamination was caused by the "negligence, wanton conduct, breach of duty, deceit, and intentional misrepresentation of the defendants." (Rec. Doc. 1-1 at 12).

The Plaintiffs brought claims against twenty-eight Defendants but have settled with most Defendants, leaving only two Defendants in the case: ExxonMobil and Intracoastal Tubular, Inc. ("Intracoastal"). Plaintiffs filed a Second Supplemental Amended Complaint on December 23, 2015 and allege, in addition to their personal injury claims, that ExxonMobil and Intracoastal Tubular Co. entered into a settlement agreement in *Dottie Adams et al. v. Joseph Grefer et al.* ("*Dottie Adams*")[2] and that Defendants breached that settlement agreement. (Rec. Doc. 76 at 1).

As background to the settlement agreement, on October 11, 2005, *Dottie Adams* was filed on behalf of roughly 1,205 claimants who asserted personal injuries allegedly caused by exposure to NORM, TERM, and other toxic and or hazardous materials as a result of the Defendants' operations in the Grefer Tract. On November 27, 2007, the 24th JDC granted Plaintiff's Motion for Leave and First Supplemental and Amended Petition, bringing the total number of plaintiffs in the *Dottie Adams* lawsuit to approximately 4,322. (Rec. Doc. 92-3).

A. **ExxonMobil's *Dottie Adams* Settlement and Subsequent Events**

In 2008, ExxonMobil and the *Dottie Adams* plaintiffs reached a settlement ("the Agreement"). Counsel for ExxonMobil summarized this Agreement in a letter, dated February

---

[2] 24th Judicial District Court ("JDC"), Parish of Jefferson, No. 624-278, Div. "K."

14, 2008, to lead Plaintiffs' counsel, Grover G. Hankins.  Under the Agreement, Plaintiffs' recovery would be based on a point system.  The letter stated:

> The application of the points system below will apply to pay individual settlement amounts to all *Dottie Adams* plaintiffs listed in the original and amended petitions filed in the 24th Judicial District Court for the Parish of Jefferson, Louisiana, that meet the criteria to receive a settlement as stated above.
>
> As a basis to reach this agreement in principle, counsel for plaintiffs in the *Dottie Adams* case have stated to ExxonMobil that they have been retained as the sole legal counsel to represent the interests of the *Dottie Adams* plaintiffs listed in the original and all amended petitions and that they have the authority to bind each of the *Dottie Adams* plaintiffs listed in the original and all amended petitions to settle their individual claims based on the point system set forth below.  ExxonMobil agrees to pay additional claimants that become plaintiffs in the *Dottie Adams* case in the future using this point system, provided said claimants meet the settlement criteria set forth above.

(Rec. Doc. 78-2 at 2).

Pursuant to the Agreement, and Plaintiffs do not dispute this point, ExxonMobil paid approximately $8,200,000 to 2,004 claimants.  (Rec. Doc. 96 at 6).  Of those 2,004 individuals who received settlement payments under the terms of the Agreement, approximately 1,691 were *Dottie Adams* Plaintiffs on February 14, 2008, the day the Agreement was executed, and 313 individuals were "new" claimants.  These 313 individuals constituted claimants who were *not* named plaintiffs in the *Dottie Adams* lawsuit, but ExxonMobil entered a settlement agreement with them pursuant to the Agreement's settlement terms and calculated those settlement amounts based on the Agreement's point system.

ExxonMobil claims that in or around June 2008, Plaintiffs' counsel provided ExxonMobil with a list of an additional 1,000 claimants, most of whom were not named in the *Dottie Adams* suit.  This list eventually swelled to over 1,700 claimants, and Plaintiffs' counsel

3

claimed that those claimants were entitled to the terms of the Agreement despite the fact that they were not named plaintiffs in the *Dottie Adams* suit. According to ExxonMobil, Plaintiffs' counsel demanded that ExxonMobil pay an additional $4.2 million in settlement money for these "new" claimants. Plaintiffs do not exactly dispute this contention, as their memorandum states: "Exxon, despite repeated requests, subsequently refused to pay the remainder of the "new" claimants." (Rec. Doc. 85-1 at 2). ExxonMobil refused to settle with these "new" claimants.[3]

Plaintiffs' counsel consequently filed a number of motions for leave to amend the *Dottie Adams* petition, seeking to formally add these "new" claimants as *Dottie Adams* plaintiffs. ExxonMobil and other Defendants opposed these motions for leave. On May 23, 2011, the 24th JDC denied the Motion for Leave to File a 2nd Supplemental and Amending Petition. (Rec. Doc. 92-9). On April 1, 2013, Plaintiffs' counsel filed a Motion for Leave to file a 3d Supplemental and Amended Petition. (Rec. Doc. 92-10). On June 25, 2013, Plaintiff's counsel filed a Motion for Leave to file a 4th Supplemental and Amending Petition and sought to add an additional 1,750 claimants as *Dottie Adams* Plaintiffs. (Rec. Doc. 92-11). On September 30, 2013, Plaintiffs' counsel filed a Motion for Leave to file a 4th Supplemental Petition. (Rec. Doc. 92-12). On October 9, 2013, Plaintiffs' counsel filed a Motion for Leave to file a 3rd Supplemental and Amending Petition (Rec. Doc. 92-13), a Motion for Leave to File a Supplemental and Amending Petition to Fourth Supplemental Petition (Rec. Doc. 92-14), and a Motion for Leave to File a Fifth Supplemental Petition (Rec. Doc. 92-15). On October 18, 2013, two of ExxonMobil and Intracoastal's co-defendants filed oppositions to Plaintiffs' motions for leave to file supplemental and amending petitions. In one opposition, a defendant noted that Plaintiff was seeking to add 1,752 new parties to the lawsuit. (Rec. Doc. 92-17 at 1). On October 24, 2013, ExxonMobil

---

[3] For the remainder of this memorandum, "new" claimants shall refer to those claimants who were not *Dottie Adams* plaintiffs as of February 14, 2008 and never became *Dottie Adams* plaintiffs.

4

filed an opposition to the pending motions for leave to file supplemental and amending petitions. (Rec. Doc. 92-18).

On October 28, 2013, the 24th JDC denied all of Plaintiffs' pending motions for leave to file amending and supplemental petitions. (Rec. Doc. 92-19 & 92-20). This denial effectively barred any additional claimants from becoming *Dottie Adams* plaintiffs.

## II.     PRESENT MOTION

### A.  Plaintiffs' Motion to Enforce Settlement Agreement (Rec. Doc. 85)

Plaintiffs file the present motion and seek enforcement of the 2008 Agreement for the Plaintiffs in this lawsuit. Plaintiffs argue that while executing the Agreement, Defendants also processed "new" claimants. (Rec. Doc. 85-1 at 2). Plaintiffs argue that ExxonMobil's refusal to pay additional "new" claimants, and their objections to Plaintiffs attempts to formally add these "new" claimants to the *Dottie Adams* suit through amended petitions, renders ExxonMobil "estopped" from asserting that the Plaintiffs did not meet a condition precedent of actually being named in the *Dottie Adams* suit. (Rec. Doc. 85-1 at 2). Plaintiffs claim ExxonMobil therefore acted in bad faith. (Rec. Doc. 85-1 at 2).

Plaintiffs argue that the terms of the Agreement only require Plaintiffs to "file" an amendment, and that any ambiguity should be construed against ExxonMobil. Moreover, Plaintiffs contend that since the Agreement is ambiguous the Court should look to the parties' conduct to determine the contract. Namely, the Court should look to the fact that ExxonMobil paid "new" claimants according to the point system outlined in the Agreement. (Rec. Doc. 85-1 at 4-5).

5

### B. Intracoastal's Opposition (Rec. Doc. 93)

Defendant Intracoastal Tubular opposes the motion and argues that while Plaintiffs' motion states "defendants, ExxonMobil and ITCO through their counsel of record, drafted and sent an agreement to counsel for plaintiffs confirming the settlement had been negotiated between the parties," Intracoastal was not a party to the Agreement. (Rec. Doc. 93 at 3). Intracoastal states that "Intracoastal and its counsel played no part in drafting the agreement, did not know about the document, did not send it to anyone, and played no part in any negotiation concerning the document." (Rec. Doc. 93 at 4). Despite this, Intracoastal states that the Plaintiffs consistently refer to the "Defendants" throughout their motion.

### C. ExxonMobil's Opposition (Rec. Doc. 95)

Defendant ExxonMobil opposes the motion. ExxonMobil contends that pursuant to Louisiana law, when a contract is unambiguous, the Court's analysis is limited to "the four corners of the instrument, and extrinsic (parol) evidence is inadmissible either to explain or to contradict the terms of the contract." (Rec. Doc. 96 at 11). ExxonMobil argues that the agreement clearly and unambiguously outlines conditions precedent that the Plaintiffs in the present case did not fulfill – they never became *Dottie Adams* plaintiffs. (Rec. Doc. 96 at 13). ExxonMobil avers that "the 2008 Conditional Agreement to Settle is a binding, conditional agreement that may be enforced by any claimant that: (1) was a *Dottie Adams* plaintiff when the Agreement was executed; or (2) became a *Dottie Adams* plaintiff thereafter." (Rec. Doc. 96 at 15).

ExxonMobil contends that Plaintiffs' argument that the Court should enforce the agreement because they filed a motion to amend the petition in *Dottie Adams* is without merit. First, ExxonMobil maintains that this argument ignores the plain language of the Agreement, as

the Agreement requires that those claimants who were not already *Dottie Adams* plaintiffs as of February 8, 2008 <u>become</u> *Dottie Adams* plaintiffs.  (Rec. Doc. 96 at 18).  Here, Plaintiffs never actually became *Dottie Adams* plaintiffs, so ExxonMobil asserts that the Court's inquiry should end there.  (Rec. Doc. 96 at 18).  Second, ExxonMobil argues that Plaintiff's assertion that merely "filing" an amended petition is sufficient to satisfy the conditional precedent is without merit.  (Rec. Doc. 96 at 19).  ExxonMobil notes that filing an amended petition without leave of court has no effect pursuant to Louisiana law.  ExxonMobil notes that this Court rejected a similar argument in *Lester v. Exxon Mobil Corp.*, and held that "[f]ailure to obtain leave of court when it is required renders the amendment totally without effect and it is deemed not to have been filed at all."  (Rec. Doc. 96 at 19) (citing *Lester v. ExxonMobil*, CIV.A. No.06-9158, 2007 WL 1029507 (E.D. La. Mar. 29, 2007) (Fallon, J.)).  Thus, ExxonMobil argues, none of the *Bernard* Plaintiffs "became" *Dottie Adams* plaintiffs because they were not listed on a filed amended or supplemental petition.  (Rec. Doc. 96 at 20).

ExxonMobil further argues that Plaintiffs' proposed interpretation of the Agreement would lead to absurd results, as it would allow any claimant to satisfy the condition precedent merely by filing an amended or supplemental petition, even if the Court denies leave to file the petition.  (Rec. Doc. 96 at 20).  ExxonMobil insists that the agreement lacks ambiguity, and that ExxonMobil did not waive or modify the condition precedent by voluntarily settling with "new" claimants.  (Rec. Doc. 96 at 22).  ExxonMobil also disputes Plaintiffs' assertion that it acted in bad faith by opposing the motions to amend the pleadings, as Plaintiffs' counsel did not have a right to demand an additional $4.2 million from ExxonMobil, and Plaintiffs' counsel tried to circumvent the Agreement by adding thousands of "new" claimants to the petition.  Moreover, ExxonMobil argues that Plaintiffs cannot prove causation vis à vis this alleged bad faith, as the

7

24th JDC exercised its own discretion not to grant the motions and numerous other defendants filed similar motions.

### D.  Plaintiffs' Reply (Rec. Doc. 102)

Plaintiffs reply.  Plaintiffs argue that it is an absurd proposition to argue that ExxonMobil "voluntarily" paid 313 "new" claimants according to the point system established by the Agreement, so the Agreement must have compelled this action.  (Rec. Doc. 102 at 5-6). Alternatively, Plaintiffs argue that ExxonMobil modified the agreement.  (Rec. Doc. 102 at 5-6). Plaintiffs also aver that these payments present an ambiguity to the Court and should be construed against ExxonMobil.

In response to ExxonMobil's argument that Plaintiffs did not become *Dottie Adams* plaintiffs, Plaintiffs argue that the 24th JDC's denial of their motions for leave to file amending and supplemental petitions has no effect on the enforceability of the Agreement.  Moreover, Plaintiffs contend that "[w]hile their "filing" may not reach legal stature, in the vernacular "filing" is commonly understood as presenting the Court through the Clerk and the preliminaries of stamping and setting for hearing."  (Rec. Doc. 102 at 9).  The term"filed", Plaintiffs argue, thus presents another ambiguity.

### E.  ExxonMobils's Response to Plaintiffs' Oral Argument (Rec. Doc. 108)

During oral argument, Plaintiffs also argued that they were entitled to recover under a theory of detrimental reliance.  Defendants disagree, arguing that Plaintiffs are unable to satisfy the three necessary elements to prove a claim of detrimental reliance pursuant to La. Civ. Code art. 1967.  First, ExxonMobil argues that Plaintiffs offer no evidence that ExxonMobil made any sort of representation to Plaintiffs or that any Plaintiffs relied on such a representation.  (Rec. Doc. 108 at 6-7).  ExxonMobil avers that Plaintiffs' claim fails under the second prong, as any

8

reliance would be presumptively unreasonable because it conflicts with the required settlement formalities under La. Civ. Code art. 3072.

Plaintiffs respond and argue that the parties can modify a written contract even when the contract limits modifications to those in writing. (Rec. Doc. 116 at 12).

## III.   LAW AND ANALYSIS

"Although the federal courts possess the inherent power to enforce agreements entered into in settlement of litigation, the construction and enforcement of settlement agreements is governed by principles of state law applicable to contracts generally." *Lockette v. Greyhound Lines, Inc.*, 817 F.2d 1182, 1185 (5th Cir. 1987) (quoting *Lee v. Hunt*, 631 F.2d 1171, 1173-74) (5th Cir. Unit A 1980)). Here, Louisiana law applies to this Court's analysis of the Agreement. Moreover, Plaintiffs bear the burden of proving the obligation by a preponderance of the evidence. *See* La Civ. Code art. 1831 ("A party who demands performance of an obligation must prove the existence of the obligation.").

The Court must first dispose of any argument to enforce the Agreement against Intracoastal. Plaintiffs present *no* evidence or argument that Intracoastal was a party to the Agreement. While Plaintiffs initially refer to both ExxonMobil and Intracoastal, the rest of their motion solely focuses on ExxonMobil's actions. Nevertheless, Plaintiffs reference "ExxonMobil" and "Defendants" interchangeably throughout their memorandum. There is no argument that the Court should enforce the Agreement against Intracoastal, and the Court will now direct its attention to Plaintiffs' argument that the Court should enforce the agreement against ExxonMobil.

A compromise agreement is governed by the same general rules of construction applicable to contracts. *Brown v. Drillers, Inc.*, 630 So.2d 741, 747 (La. 1994). Louisiana law

provides, "[w]hen the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation maybe made in search of the parties' intent." La. Civ. Code art. 2046. "Under this Article, when a clause in a contract is clear and unambiguous, the letter of that clause should not be disregarded under pretext of pursuing its spirit." Official Comment, La. Civ. Code art. 2046. Thus, when a contract's terms are clear, the Court shall only seek the meaning and intent of the parties within the four corners of the instrument and cannot look to parol evidence. La. Civ. Code art. 1848; *Hampton v. Hampton*, 713 So.2d 1185, 1189 (La. App. 1 Cir. 1998); *See also Claitor v. Brooks*, 137 So.3d 638, 644-45 (La. App. 1 Cir. 2013) ("[W]here the words of a contract are clear, explicit and lead to no absurd consequences, the meaning and intent of the parties must be sought within the four corners of the instrument and cannot be explained or contradicted by parol evidence.").

Article 3076[4] provides "[a] compromise settles only those differences that the parties intended to settle, including the necessary consequences of what they express." La Civ. Code art. 3076. In applying the rule of construction set forth in La. Civ. Code art. 3076, "courts are guided by the general principal 'that the contract must be construed as a whole and in light of attending circumstances.'" *Robinson v. Robinson*, 778 So.2d 1105, 1122 (La. 2001). "Thus, the intent which the words of the compromise instrument express in light of the surrounding circumstances at the time of the execution of the agreement is controlling." *Id.* There is therefore an exception to the general rule that limits analysis to the four corners of the contract "when there is a dispute between the parties as to exactly what matters were intended to be

---

[4] "La. Civ.Code Art. 3076 was enacted to reproduce the substance of La. Civ.Code Art. 3073 as follows, 'A compromise settles only those differences that the parties clearly intended to settle, including the necessary consequences of what they express." The revisions comments indicate, 'This Article reproduces the substance of Article 3073 of the Louisiana Civil Code of 1870. It is not intended to change the law.'" *Kling Realty Co. v. Texaco, Inc.*, No. CIV.A. 06-1492, 2007 WL 2693855, at *9, n.6 (W.D. La. Sept. 11, 2007) (quoting LA LEGIS 138 (2007)).

settled by the compromise agreement." *Smith v. Leger*, 439 So.2d 1203, 1206 (La. Ct. App. 1 Cir. 1983)

Louisiana courts have construed this exception narrowly and have limited the rule's application to cases "in which substantiating evidence is presented establishing either (1) that the releasor was mistaken as to what he or she was signing, even though fraud was not present; or (2) that the releasor did not fully understand the nature of the rights being released or that the releasor did not intend to release certain aspects of his or her claim." *Brown,* 630 So.2d at 749 (citing *Higgins v. Spencer,* 531 So.2d 768, 772 (La.App. 1 Cir. 1998)), *writ denied,* 532 So.2d 106 (La.1988)). "When the factual circumstances surrounding the execution of the release instrument do not fall within either of the above categories, Louisiana courts have applied the general rule of construction in La. C[iv.] C[ode] art.2046 and have not hesitated to confine their analysis to the four corners of the instrument." *Hudson v. Progressive Sec. Ins. Co.*, 1 So. 3d 627, 632-33 (La. App. 2 Cir. 2008). Here, neither of those circumstances are present, so the Court will not look beyond the four corners of the Agreement based on the rule of construction found in La. Civ. Code Art. 2076.

"A conditional obligation is one dependent on an uncertain event. If the obligation may not be enforced until the uncertain event occurs, the condition is suspensive." La. Civ. Code art. 1767. The pertinent parts of the Agreement state:

> The application of the points system below will apply to pay individual settlement amounts to all *Dottie Adams* **plaintiffs listed in the original and amended petitions filed in the 24th Judicial District Court for the Parish of Jefferson, Louisiana**, that meet the criteria to receive a settlement as stated above.
>
> **ExxonMobil agrees to pay additional claimants that become plaintiffs in the *Dottie Adams* case** in the future using this point system, provided said claimants meet the settlement criteria set forth above.

11

The "criteria above" include residency or employment requirements. From this language, it is obvious that for a claimant to enforce the Agreement, she had to satisfy the condition precedent of either (1) being a *Dottie Adams* plaintiff as of February 14, 2008, by either being listed on the original or amended petitions; or (2) becoming a *Dottie Adams* plaintiff.

Plaintiffs in the instant case do not dispute that they were not *Dottie Adams* plaintiffs when the agreement was executed, but they contend that they qualify for the settlement because (1) the parties modified the contract to include these additional claimants; (2) Plaintiffs filed amended and supplemental petitions in the 24th JDC, and the Court should find that these filings are sufficient or that ExxonMobil acted in bad faith; (3) the contract is ambiguous and the Court should look outside the contract to the parties conduct; or (4) the Plaintiffs can recover under a theory of detrimental reliance.

### A. ExxonMobil Modified the Contract through Payment to "New Claimants"

Plaintiffs assert that ExxonMobil modified the contract through their payment to 313 "new" claimants. "The party asserting modification of an obligation must prove by a preponderance of the evidence facts or acts giving rise to the modification." *Id.* at 501. *See* La. Civ. Code art. 1831 ("A party who asserts that an obligation is null, or that it has been modified or extinguished, must prove the facts or acts giving rise to the nullity, modification, or extinction."). While Article 1848 provides that parol evidence is admissible to prove that a written act was modified by a subsequent and valid oral agreement, such verbal amendments *only* apply to contracts that are not required to be in writing. *See Salley v. Louviere*, 162 So. 81, 813 (La. 1935); *Monroe v. Physicians Behavior Hosp., LLC*, 147 So.3d 787, 797 (La. App. 2 Cir. 2014); *See also* Peter S. Title, Exception to General Rule – Modification of Contracts, La. Prac. Real Est. § 7:47, (2d ed.). Pursuant to Louisiana law, settlements must be in writing. La. Civ.

Code art. 3072. ExxonMobil's alleged statements regarding settlements with "new" claimants therefore constitute inadmissible parol evidence to prove a contract modification because such modifications must be in writing.

Even if the Court could consider this evidence, Plaintiffs would not meet their burden to prove a modification. The fact that ExxonMobil chose to settle with additional claimants according to the point system set forth in the Agreement is not evidence that they unequivocally modified the agreement to include claimants, who did not satisfy the condition of being or becoming a *Dottie Adams* plaintiff, in the Agreement. Plaintiffs fail to cite a single supporting case that would support such a finding – that a Defendant's decision to voluntarily settle with claimants who are not parties to a settlement would modify the settlement as to require the Defendant to settle with *all* similarly situated claimants. Such a ruling would surely chill future settlements and is likely why the Plaintiffs have been unable to find a single court that enforced such a despotic rule.

### B.  Plaintiffs never "filed" an amended petition in the 24th JDC

Based on the unambiguous language of the Agreement, eligible "additional" claimants must become *Dottie Adams* plaintiffs. Under Louisiana law, once an answer is served, "the petition . . . may be amended only be leave of court or by written consent of the adverse party." La. Code Civ. Proc. art. 1151. "Failure to obtain leave of court when it is required renders the amendment totally without effect and it is deemed not to have been filed at all." *Morgan v. ABC Mfr.*, 637 So. 2d 1076, 1079 (La. App. 1 Cir. 1994). Here, the 24th JDC denied Plaintiffs' counsels' motions to amend or supplement the *Dottie Adams* petitions with new claimants. Plaintiffs' filings therefore impose no legal effect: it as if Plaintiffs never filed those amended

13

petitions.  In other words, the claimants did not become *Dottie Adams* plaintiffs and were therefore *not* eligible for the Agreement.

In their reply, Plaintiffs urge this Court to adopt the vernacular definition of the word "filing," but the terms "filed in the 25th Judicial District Court for the Parish of Jefferson, Louisiana" only apply to those individuals who were *Dottie Adams* Plaintiffs on February 14, 2008 and not to additional claimants.  Moreover, even if the Court were to find that the term "filed" applied to additional claimants, Plaintiffs' suggested interpretation rings hollow.  The Agreement requires a filed amended petition, the filing of a legal record with court, so there can be no other definition other than what Louisiana law defines as a filed amended petition pursuant to La. Code Civ. Proc. art. 1151.  The term "filed" is therefore unambiguous.

The Court is unpersuaded by the argument that it should enforce the Agreement because ExxonMobil acted in bad faith.  The 24th JDC exercised its own discretion to deny Plaintiffs' motions, and ExxonMobil's co-defendants also filed oppositions to Plaintiffs' motions for leave to file amended petitions.  Based on the 24th JDC's denial of leave, the Court finds that there must not have been sufficient connectivity or commonality for the Plaintiffs to add those claimants.

### C.  Court Should Interpret Contract Terms based on ExxonMobil's Performance

As already stated, the Court is not persuaded by Plaintiffs' argument that the contract is ambiguous as to what it means to become a *Dottie Adams* plaintiff in the future or to file an amended petition.  Much of Plaintiffs' argument focuses on the fact that ExxonMobil paid "new" claimants, and that this evidences that such "new" claimants satisfied the condition precedent of becoming a *Dottie Adams* plaintiff by filing an amended petition.  But Plaintiffs fail to deal with the touchstone of Louisiana contract interpretation: the Court will not look outside the contract

when the terms are unambiguous. As articulated above, Louisiana law provides a clear answer as to how one can file an amended petition and include an additional plaintiff. The Plaintiffs in this case were merely unsuccessful in their many efforts to achieve that result. Since the terms of the Agreement are unambiguous, the Court cannot look beyond the four corners to interpret the contract.

### D. Detrimental Reliance

As previously noted, during oral argument, Plaintiffs' counsel introduced a new theory of recovery under detrimental reliance. A cause of action for detrimental reliance originates with the Louisiana Civil Code:

> A party may be obligated by a promise when he knew or should have known that the promise would induce the other party to rely on it to his detriment and the other party was reasonable in so relying. Recovery may be limited to the expenses incurred or the damages suffered as a result of the promisee's reliance on the promise. Reliance on a gratuitous promise made without required formalities is not reasonable.

La. Civ. Code art. 1967. "Detrimental reliance requires (1) a representation by conduct or word, (2) justifiable reliance on the representation, and (3) a change in position to the plaintiff's detriment as a result of the reliance." *Drs. Bethea, Moustoukas and Weaver LLC v. St. Paul Guardian Ins. Co.*, 376 F.3d 399, 403 (5th Cir. 2004); *see Suire v Lafayette City-Parish Consol. Gov't*, 907 So. 2d 37, 59 (La. 2005). "Significantly, to prevail on a detrimental reliance claim, Louisiana law does not require proof of a formal, valid, and enforceable contract." *Suire*, 907 So. 2d at 59. Indeed, detrimental reliance "usually functions when no written contract or an unenforceable contract exists between the parties." *Drs. Bethea, Moustoukas and Weaver LLC*, 376 F.3d at 403. "Rather, the existence of a promise and a reasonable reliance on that promise to one's detriment are the only requirements." *Percy J. Matherne Contractor Inc. v. Grinnell Fire Protection Systems Co.*, 915 F. Supp. 818, 824 (M.D. La. 1995). In general the doctrine of

detrimental reliance is disfavored by the law and all claims must be analyzed carefully and strictly. *SJB Group, LLC v. TBE Group, Inc.*, 2013 WL 6194571, at *10 (W.D. La. Nov. 26, 2013) (citing *May v. Harris Management Corp.*, 928 So.2d 140, 145 (La. App. 1 Cir. 2005)).

Based on the facts of this case, Plaintiffs present no cognizable detrimental reliance claim. There was an enforceable contract in the instant case – the Plaintiffs in this case were just not parties to the Agreement. More significantly, Louisiana law *requires* a settlement agreement to be written to be enforceable, thus negating any argument that Plaintiffs' alleged reliance was reasonable. The Louisiana Supreme Court has held that "[a]bsent fraud, or at least affirmative misrepresentation as to the necessity of writing…it is almost always the case that it will be unreasonable to rely on an oral promise where the law requires such a promise to be in writing to be enforceable." *Morris v. Friedman*, 663 So.2d 19, 26 n.14 (La. 1995). The Louisiana First Circuit relied on this principal and refused to enforce a settlement agreement in a case where the party sought to enforce an agreement based on a theory of detrimental reliance. *Amitech U.S.A., Ltd. v. Nottingham Const. Co.*, 57 So.3d 1043, 1052 (La.App. 1 Cir. 2010). The court deemed any reliance unreasonable because Louisiana law mandates that parties record settlement agreements in writing to be enforceable. *Id.* Similarly, Plaintiffs' claims in the instant case fail under a theory of detrimental reliance because any reliance is unreasonable in the absence of a written settlement agreement as required by La. Civ. Code. art. 3072.

While Plaintiffs argue that modifications to written contracts are permitted even when those contracts limit modifications to those in writing, this argument is misguided. There is a distinction between when a contract requires a written modification and when the law mandates a written modification, and this case falls within the latter situation. It is thus evident that

Plaintiffs cannot satisfy the second element of La. Civ. Code. art. 1967 because the settlement must have been in writing, and their detrimental reliance claims fail.

### IV. CONCLUSION

In sum, Plaintiffs are unable to offer any credible argument that the Court should enforce the agreement when they never became *Dottie Adams* plaintiffs. Evidence that ExxonMobil chose to settle with some "new" claimants does not modify the contract because any modification had to be in writing pursuant to Louisiana law. Moreover, the Plaintiffs never became *Dottie Adams* plaintiffs and were not listed on an amended or supplemental petition filed in the 24th JDC, as required by the clear terms of the Agreement. Finally, the Court does not find any ambiguity that would compel the Court to look to parol evidence to ascertain the contract's meaning and the Plaintiffs cannot invoke detrimental reliance because Louisiana law requires a written agreement. Therefore,

**IT IS ORDERED** that Plaintiffs' Motion to Enforce the Settlement Agreement (Rec. Doc. 85) is hereby **DENIED**. The Court will contact the parties to schedule a status conference to discuss a scheduling order.

New Orleans, Louisiana this 20th day of April, 2015.

_____
UNITED STATES DISTRICT JUDGE