## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **CATHERINE M. BERNARD,** *et al.,*<br>*plaintiff*<br><br>**v.**<br><br>**JOSEPH GREFER,** *et al.,*<br>*defendant* | **Civil Action No. 2:14-cv-00887**<br><br>**Section "L" (2)**<br><br>**Judge Eldon E. Fallon**<br><br>**Magistrate Judge Joseph C. Wilkinson, Jr.** |

## DEFENDANT EXXON MOBIL CORPORATION'S OPPOSITION TO PLAINTIFFS' MOTION FOR REHEARING

There is a line between zealous advocacy and professional misconduct, and Plaintiffs' counsel crossed that line when they filed a Motion for Rehearing in which they: (1) accused undersigned counsel of misleading the Court and making "material misrepresentations" in their filings;[1] (2) accused this Honorable Court of "misinterpreting" their claims,[2] failing to "equally" apply the same legal standard,[3] and "unfairly" relying on "totally rebutted" defense arguments,[4] (3) failed to cite or analyze the standards governing their motion; (4) failed to present *any* newly-discovered evidence or intervening case law; and (5) actually denied previously arguing there was a subsequent modification.[5]

Nevertheless, Exxon Mobil Corporation ("ExxonMobil" or "Defendant") does not move this Court to hold opposing counsel in contempt and does not seek sanctions. Defendant

---

[1] Rec. Doc. 119-1, Plfs' Memo. in Supp. of Mtn. for Rehearing ("Rehearing Memo.") at p.6 ("The Defendant in its filings have misled the Court and made material misrepresentations as to the motivations and actions surrounding the alleged 'voluntary' settlement with and payment of 313 non-Dottie Adams Plaintiffs.") (underline added).

[2] *Id.* at p.1 ("Plaintiffs believe that the Court has misinterpreted Plaintiffs' claims in their 'Motion to Enforce Settlement Agreement.'").

[3] *Id.* at p.3 ("With regard to extraneous evidence, if the Court is to apply that standard to the Plaintiffs, it should be applied equally to the Defendant.").

[4] *Id.* at p.3 ("Finally, the Court's reliance on defendant's arguments, unsupported by any facts that Defendant's settled voluntarily and paid 313 non-Dottie Adams Plaintiffs over a 2-year period of time, is unfair to the Plaintiffs. Such arguments are totally rebutted by the Record.").

[5] *Id.* at p.2 ("Plaintiffs have never asserted that the Settlement Agreement was modified . . .").

respectfully submits *only* that Plaintiffs' Motion for Rehearing should be denied, and the Court's

ruling should reflect that ExxonMobil has made no material misrepresentations in their filings.

## I.     Plaintiffs' stated grounds for rehearing do not satisfy Rule 59(e) standards.

This Court's April 20, 2015 Order and Reasons[6] denying Plaintiffs' Motion to Enforce

Settlement[7]  was an interlocutory order, which a district court may reconsider pursuant to Federal

Rule of Civil Procedure 54(b).[8] On April 30, 2015, Plaintiffs filed a Motion for Rehearing, which

was docketed as a Motion for Reconsideration.[9] Although the Federal Rules of Civil Procedure

do not recognize a motion for reconsideration (or, as styled by Plaintiffs, a motion for rehearing)

a court can reconsider its own interlocutory order for any reason it deems sufficient.[10]

When a movant seeks review of a judgment no later than twenty-eight (28) days after

entry of that judgment, this Court has treated the motion as a Rule 59(e) motion. As this Court

previously explained in *Jones v. Tidewater, Inc.*, 2015 WL 1649991 (E.D. La. Apr. 14, 2015):

> The Federal Rules of Civil Procedure do not specifically recognize a motion for
> reconsideration. However, when a movant seeks review of a judgment, such as in
> the present case, courts treat a motion for reconsideration as either a Rule 59(e)
> motion to alter or amend judgment, or as a Rule 60(b) motion for relief from a
> judgment or order. The motion is considered a Rule 59(e) motion if filed no later
> than 28 days of entry of a judgment, and a Rule 60(b) motion if filed after this
> time period.[11]

Here, Plaintiffs filed their Motion for Rehearing on April 30, 2015, ten (10) days after

entry of the Court's Order & Reasons on April 20, 2015. Thus, Plaintiffs' motion should be

evaluated under the standards for altering or amending a final judgment under Rule 59(e).

---

[6] Rec. Doc. 117, Court's Order & Reasons.
[7] Rec. Doc. 85, Plfs' Mtn. to Enforce.
[8] *See* FED. R. CIV. P. 54(b) ("… any order or other decision . . .that adjudicates fewer than all of the
claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the
claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims
and all the parties' rights and liabilities.").
[9] Rec. Doc. 119, Plfs' Mtn. for Rehearing.
[10] *See Stoffels ex rel. Tel. Concession Plan v. SBC Commc'ns, Inc.*, 677 F.3d 720, 726-727 (5ᵗʰ Cir. 2012).
[11] *Jones*, 2015 WL 164991 at *2 (internal citations omitted).

It is well-established that reconsidering a judgment under Rule 59(e) is an extraordinary remedy, and should only be used to correct manifest errors of law or fact, or to present newly discovered evidence. As this Court has held:

> A Federal Rule of Civil Procedure 59(e) motion "is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment." Rather, Rule 59(e) serves the narrow purpose of correcting manifest errors of law or fact, or presenting newly discovered evidence. "'Manifest error' is one that 'is plain and indisputable, and that amounts to a complete disregard of the controlling law.'" The United States Court of Appeals for the Fifth Circuit has noted that altering, amending, or reconsidering a judgment under Rule 59(e) "is an extraordinary remedy that should be used sparingly." "A Rule 59(e) motion should not be used to re-litigate prior matters that ... simply have been resolved to the movant's dissatisfaction."[12]

"Motions for reconsideration should <u>not</u> be avenues for re-litigating old matters, raising new arguments, or submitting evidence that could have been presented before."[13]

Tellingly, in their Memorandum, Plaintiffs did not identify the applicable standard, let alone explain *how* their Motion for Rehearing satisfied Rule 59(e). Instead, Plaintiffs improperly dedicated their Memorandum to rehashing their prior evidence and legal theories, including:

- Rehashing Plaintiffs' argument that the settlement agreement was subsequently modified by the performance of the parties,[14] which Plaintiffs previously argued,[15] and this Court rejected in its ruling;[16]

- Rehashing Plaintiffs' argument that subsequent modifications of settlement agreements do not have to be in writing,[17] which Plaintiffs previously argued,[18] and this Court rejected in its ruling;[19] and

---

[12] *Thommassie v. Antill Pipeline Const. Co.*, No. CIV.A. 12-2750, 2014 WL 3734759, at *2 (E.D. La. July 28, 2014) (Fallon, J.) (internal citations omitted).

[13] *Metairie Bank & Trust Co. v. Payne*, No. CIV A 99-202, 2000 WL 979980, at *1 (E.D. La. July 17, 2000) (Fallon, J.) (underline added) (citing *Campbell v. St. Tammany Parish School Board*, No. 98–2605, 1999 WL 777720, at *1 (E.D. La. Sept. 29, 1999)).

[14] Rec. Doc. 119-1, Plfs' Rehearing Memo, Sections I & II, pp. 1-5.

[15] Rec. Doc. 85-1, Plfs' Motion to Enforce Memo. at Section II, pp.3-5; *see also* Rec. Doc. 102, Plfs' Motion to Enforce Reply Memo. at Sections II & III, pp.1-6.

[16] Rec. Doc. 117, Order & Reasons at III(A), pp.12-13; *see also* Rec. Doc. 119-1, Plfs' Motion for Rehearing Memo. at p.2 ("In its ruling regarding Plaintiffs' claim of modification by performance…").

[17] Rec. Doc. 119-1, Plfs' Rehearing Memo, Section II, p.3.

- Rehashing Plaintiffs' argument that ExxonMobil did not "voluntarily" pay 313 non-*Dottie Adams* plaintiffs,[20] which Plaintiff previously argued,[21] and this Court rejected in its ruling.[22]

Citing the final paragraph on Page 2 of the settlement agreement, Plaintiffs also attempt to repackage their argument that the settlement agreement was *subsequently modified* by ExxonMobil's settlement with 313 non-*Dottie Adams* plaintiffs by arguing that the settlement agreement was *subsequently modified* by ExxonMobil's closing documents with 313 non-*Dottie Adams* plaintiffs.[23] Pursuant to Rule 59(e), Plaintiffs' argument based on the final paragraph of Page 2 of the settlement agreement does not entitle Plaintiffs to reconsideration (or rehearing) because: (1) that argument only rehashes Plaintiffs' rejected argument that ExxonMobil's settling with non-*Dottie Adams* plaintiffs somehow modified the settlement agreement with *Dottie Adams* plaintiffs; (2) the settlement agreement and the closing documents are *not* new evidence; and (3) Plaintiffs could have offered or raised this argument before this Court's ruling on April 20, 2015.

---

[18] Exhibit "A" hereto, Transcript of 3/24/15 Hearing at p. 10:8-16 ("That's why I say it was an agreement -- it was a mutually agreed to modification. It wasn't reduced to writing, but it doesn't have to be reduced in writing in Louisiana law.").

[19] Rec. Doc. 117, Order & Reasons, pp.12-13 ("Pursuant to Louisiana law, settlements must be in writing. ExxonMobil's alleged statements regarding settlements with 'new' claimants therefore constitute inadmissible parol evidence to prove a contract modification because such modifications must be in writing.") (citing LA. CIV. CODE art. 3072).

[20] Rec. Doc. 119-1, Plfs' Rehearing Memo. at p.4 ("The Defendants say these 313 non-Dottie Adams' Plaintiffs were paid 'voluntarily', implying outside of the 2008 Settlement Agreement, and that is as untrue as it is fallacious."); *Id.* at Section V, p. 6.

[21] Rec. Doc. 102, Plfs' Motion to Enforce Reply Memo. at Section II, pp.2-4 ("In its Opposition, Exxon offers up an explanation for settlement payments to non-DA Claimants as having been made 'voluntarily'…This is so remotely incredible as to…").

[22] Rec. Doc. 117, Order & Reasons at Section III(A), pp.12-13; *see also Id.* at Section IV, p.17 ("Evidence that ExxonMobil chose to settle with some 'new' claimants does not modify the contract because any modification had to be in writing pursuant to Louisiana law.").

[23] Rec. Doc 119-1, Plfs' Rehearing Memo. at Section IV, p.5.

II.     **This Court correctly held that the plain language of the settlement agreement
required "additional claimants" to "become" *Dottie Adams* plaintiffs.**

In its Order and Reasons, this Court painstakingly reviewed Louisiana law governing the
construction of contracts in general and settlement agreements in particular.[24] After reviewing
that law, this Court quoted the pertinent parts of the settlement agreement,[25] and correctly found
that the terms of the condition precedent were clear and unambiguous:

> From this language, it is obvious that for a claimant to enforce the Agreement, she
> had to satisfy the condition precedent of either (1) being a *Dottie Adams* plaintiff
> as of February 14, 2008, by either being listed on the original or amended
> petitions; or (2) becoming a *Dottie Adams* plaintiff.[26]

Because these conditions precedent were clear and unambiguous, this Court correctly confined
its analysis to the four corners of the instrument. [27]

In its Motion for Rehearing, Plaintiffs do not present new evidence or cite any
intervening case law regarding the conditions precedent for non-*Dottie Adams* plaintiffs as of
February 14, 2008. Instead, Plaintiffs merely state, in conclusory fashion, that the settlement
agreement "is susceptible to more than one interpretation,"[28] and rehash the same arguments and
cases this Court reviewed and correctly rejected. Plaintiffs' conclusory statement does not
warrant a rehashing of the briefing that has occurred over the course of the last two months, does
not satisfy Rule 59(e) standards, and does not entitle Plaintiffs to reconsideration (or rehearing).

---

[24] Rec. Doc. 117, Order & Reasons at Section III, pp.9-11.
[25] *Id.* at p. 11.
[26] *Id.* at p. 12.
[27] *Id.* at pp. 14-15 ("But Plaintiffs fail to deal with the touchstone of Louisiana contract interpretation: the
Court will not look outside the contract when the terms are unambiguous.").
[28] Rec. Doc. 119-1, Plfs' Rehearing Memo. at p.4 ("Clearly, as has been expressed by the parties, the
2008 Settlement Agreement is susceptible to more than one interpretation…").

**III.     Plaintiffs' claim that they "never asserted that the settlement agreement was modified by a subsequent and valid 'oral agreement'" is absolutely false.**

After this Court held that Louisiana law requires a modification of a settlement agreement to be reduced to writing,[29] Plaintiffs made a 180° turn, and now insist that "Plaintiffs have *never* asserted that the Settlement Agreement was modified by a subsequent and valid 'oral agreement.'"[30]

In reality, Plaintiffs' principal argument has *always* been that the 2008 Settlement Agreement was modified, by mutual agreement, to include the non-*Dottie Adams* plaintiffs, *and* that the modification need not be reduced to writing. Plaintiffs' counsel summed up their position perfectly during oral argument:

> Mr. Riess:     That was pursuant to the specific agreement between the parties to modify the document, the settlement agreement, to include non-Dottie Adams plaintiffs or the claimants -- they weren't plaintiffs -- to include them in the settlement.
>
> They couldn't have done it without us. That's why I say it was an agreement -- it was a mutually agreed to modification. It wasn't reduced to writing, but it doesn't have to be reduced in writing in Louisiana law.[31]

In addition to Mr. Riess' arguing that "it was a mutually agreed to modification," Defendants now call this Court's attention to other excerpts from Plaintiffs' briefing and oral argument,[32] where Plaintiffs insisted that the Settlement Agreement was subsequently modified:

- "These errors exhibit Exxon's hopeless confusion, most importantly underlying the omission of the **mutually agreed modification** of the

---

[29] Rec. Doc. 117, Order & Reasons at pp.12-13 ("Pursuant to Louisiana law, settlements must be in writing. ExxonMobil's alleged statements regarding settlements with 'new' claimants therefore constitute inadmissible parol evidence to prove a contract modification because such modifications must be in writing.") (emphasis added) (citing LA. CIV. CODE art. 3072).

[30] Rec. Doc. 119-1, Pfls' Rehearing Memo. at p.2; *Id.* p.2 ("Nor, have the Plaintiffs claimed that they relied on an 'oral promise' where the law requires such a promise to be in writing."); *Id.* at p.2 ("The Plaintiffs have offered no evidence of any 'oral promise' or 'oral modification'" of the Agreement.").

[31] Ex. "A," Transcript of Hearing (3/24/2015) Hearing at p.10:8-16.

[32] All original formatting has been removed and reference to the modification argument has been bolded.

agreement, the only conceivable explanation for settlement of the 313 non-DA clients under the Dottie Adams settlement agreement."[33]

- "George F. Riess, Esq.: . . . There was no refusal to settle with the . . . non-Dottie Adams plaintiffs until 313 had actually not only been settled, but they had been settled pursuant to the settlement documents and the settlement requirements under the settlement agreement. By which I mean, they were not -- they were presented and **it required our agreement with them**, **which is the modification** that I refer to in the brief.[34]

- "The record herein, as set forth at II, above, is replete with the evidence indicating **modification by mutual consent** and in exhaustive conduct by both parties implementing that modification.[35]

- Mr. Riess: Two settlement agreements? There wasn't. There was one settlement agreement with the **modification** that I mentioned.[36]

- "The obvious reason Exxon mischaracterizes the settlement agreement is because it ignores and omits any reference to the **modification** of the settlement agreement."[37]

- "Accordingly, as will be shown below, Exxon distributed settlement payments to non-DA Claimants not voluntarily, but **in conformity with the modified** settlement agreement."[38]

- "Obviously, the parties **modified** the settlement contract."[39]

- "This argument again ignores Exxon's settlement pursuant to the **modification** between the parties of the agreement. . ."[40]

- "All **in conformity with the modification** between the parties of the settlement."[41]

- "Accordingly, as an indispensable "attending event and circumstances", the **modification** between the parties, specifically including – **by agreement** and

---

[33] Rec. Doc. 102, Plfs' Motion to Enforce Reply Memo. at p.12.
[34] Ex. "A" hereto, Transcript of Hearing (3/24/2015) Hearing at p.8:7-14.
[35] Rec. Doc. 116, Plfs' Supp. Memo. at p.13.
[36] *Id.* at p.15:17-19.
[37] Rec. Doc. 102, Plfs' Motion to Enforce Reply Memo. at p.3.
[38] *Id.*
[39] *Id.* at p.6.
[40] *Id.* at p.11.
[41] *Id.*

conduct of the parties – the non-DA Claimants, make that construction equally indispensable."[42]

- Court: But it says "filed" though. It says the Dottie Adams plaintiffs listed in the original and amended petitions filed in the 24th Judicial District Court.

  Riess: That was **modified**, Judge. That's the agreement that we had. The specific agreement -- and let me tell you -- let me tell you what proves it.[43]

- "Moreover, the question of -- and you raised this as a fundamental issue and it is -- the filing requirement was specifically waived or the object of **modification**, I should say, between the parties. So that the non-Dottie Adams plaintiffs were settled with as part of that **modification**.[44]

- Mr. Riess: Well, they [ExxonMobil] don't really address the **modification**.[45]

- Mr. Riess: But let me be very clear, what you said is exactly true, but what we suggest is that we had again, a **modification** that is full of proof.[46]

The writing requirement for a modification to a settlement agreement is not, as Plaintiffs suggest, a "red herring."[47] Plaintiffs clearly raised the issue of a mutually agreed-to modification.

**IV.    Plaintiffs' counsel improperly accused defense counsel of having "misled the Court" and "made material misrepresentations."**

We let it slide the first time Plaintiffs' counsel accused us of mischaracterizing, misrepresenting, and omitting critical facts.[48] We said nothing when Plaintiffs' counsel personally insulted undersigned counsel by declaring that our position was "so remotely incredible as to make one wonder whether he lacks the creativity and imagination of lawyers who lumber under the yoke of an international oil company."[49] We chose to ignore their criticism

---

[42] Rec. Doc. 102, Plfs' Motion to Enforce Reply Memo. at p.12.
[43] Ex. "A," Hearing Transcript at p.11:6-8.
[44] *Id.* at p.11:14-18
[45] *Id.* at p.11:25 to 12:1.
[46] *Id.* at p.16:10-12.
[47] Rec. Doc. 119-1, Plfs' Rehearing Memo. at p.6.
[48] Rec. Doc. 102, Plfs' Motion to Enforce Reply Memo. at p.3 ("… Exxon mischaracterizes the settlement agreement…"); *Id.*, at p. 5 ("This is a misrepresentation."); *Id.*, at p. 7 (Exxon's statement is fraught with critical omissions of fact."); *Id.*, at p.8 ("… its entire opposition turns upon that mischaracterization.").
[49] Rec. Doc. 102, Plfs' Motion to Enforce Reply Memo. at p.4.

of ExxonMobil for retaining "new, unfamiliar counsel,"[50] and their barbs about our "hopeless confusion" and "absurd argument."[51]

We held our tongue when Plaintiffs' counsel failed to realize that the Louisiana Civil Code articles governing compromises were amended in 2007 and Article 3073 became Article 3076, and incorrectly declared that "Exxon misstates and mistakenly cited La.CC art. 3076 and Robinson v. Robinson . . ."[52] We were confident this Court would recognize why the Louisiana Supreme Court in *Robinson* cited Article 3073 instead of Article 3076 (which didn't exist yet), and we were glad this Court explained the legislative history to Plaintiffs in its Order.[53]

We never returned fire. When we discovered that Plaintiffs' counsel misquoted a case in their Supplemental Memorandum by literally adding the word "settlement" before "contract" (which had the intended or unintended consequence of making the holding sound applicable to the instant case),[54] we gave counsel the benefit of the doubt, and we didn't run to this Court screaming and hollering. Instead, as a professional courtesy, we sent counsel the attached letter giving them the opportunity to correct their mistake and in whatever fashion they saw fit – something they still haven't done.[55]

However, after reading Plaintiffs' Memorandum in Support,[56] ExxonMobil is compelled to ask this Court to address opposing counsel's spurious and disparaging accusations. Plaintiffs absolutely crossed the line when they wrote: "The Defendants <u>in its filings have misled</u> and

---

[50] Rec. Doc. 102, Plfs' Motion to Enforce Reply Memo. at p.16 ("The continued breach by Exxon, to the point of enrolling new, unfamiliar counsel, is ongoing in their Opposition to this Motion to Enforce. . .").
[51] Rec. Doc. 102, Plfs' Motion to Enforce Reply Memo. at p.10 ("These errors exhibit Exxon's hopeless confusion…"); Rec. Doc. 116, Plfs' Supp. Opp. to ExxonMobil's Supp. Memo. in Opp. to Plfs' Mtn. to Enforce Settlement Agreement ("Plfs' Supp. Memo."), p.16 ("This is no less than creation of an absurd argument and rebuttal thereof by its very creators…").
[52] Rec. Doc 102, Plfs' Motion to Enforce Reply Memo. at p.9.
[53] Rec. Doc. 117, Order & Reasons at p.10, fn. 4.
[54] Rec. Doc. 116, Plfs' Supp. Memo. at pp.9, 12.
[55] Exhibit "B" hereto, Ltr. to Plfs' Counsel (4/16/15).
[56] Rec. Doc. 119-1, Plfs' Rehearing Memo.

- 9 -

made material misrepresentations as to the motivations and actions surrounding the alleged 'voluntary' settlement with and payment of 313 non-Dottie Adams plaintiffs."[57] Undersigned counsel made no material misrepresentations in *any* of its filings, which is why Plaintiffs do not cite or identify *any* misrepresentations in *any* ExxonMobil filing. That type of unsubstantiated personal attack is not zealous advocacy, and should be corrected in the suit record.

## V.    Conclusion.

For the above and foregoing reasons, this Court should deny Plaintiffs' Motion for Rehearing, and should hold that ExxonMobil did not mislead this Court or make *any* material misrepresentations in its filings.

Respectfully submitted,

***Attorneys for Defendant, Exxon Mobil Corporation:***

*/s/ John Jerry Glas*

| | |
|---|---|
| William E. Wright, Jr. (#8564) | Glen M. Pilié (#1539) |
| John Jerry Glas (#24434) | Donald C. Massey (#14177) |
| Raymond C. Lewis (#31236) | Martin A. Stern (#17154) |
| **DEUTSCH, KERRIGAN** | E. Paige Sensenbrenner (#18429) |
| **& STILES, L.L.P.** | Valeria M. Sercovich (#24642) |
| 755 Magazine Street | Roland M. Vandenweghe, Jr. (#25283) |
| New Orleans, LA  70130 | **ADAMS AND REESE LLP** |
| Tel:  (504) 593-0627 | 701 Poydras Street, Suite 4500 |
| Fax:  (504) 566-4058 | New Orleans, LA 70139 |
| wwright@dkslaw.com | Tel: (504) 581-3234 | Fax (504) 566-0210 |
| jglas@dkslaw.com | piliegm@arlaw.com |
| rlewis@dkslaw.com | donald.massey@arlaw.com |
| | martin.stern@arlaw.com |
| | paige.sensenbrenner@arlaw.com |
| | sercovichvm@arlaw.com |
| | roland.vandenweghe@arlaw.com |

---

[57] Rec. Doc. 119-1, Plfs' Rehearing Memo. at p.6.

## CERTIFICATE OF SERVICE

The undersigned certifies that on the 11th day of May 2015, the above and foregoing pleading, Exxon Mobil Corporation's Opposition to Plaintiffs' Motion to Enforce Settlement Agreement, was electronically filed with the Clerk of Court by using the CM/ECF system pursuant to the rules and procedures of the United States District Court, Eastern District of Louisiana and a copy of same has been served on all parties through their attorneys via the court's CM/ECF system.

*/s/ John Jerry Glas*
John Jerry Glas