UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **CATHERINE M. BERNARD, ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 14-887** |
| **JOSEPH GREFER, ET AL.** | **SECTION "L" (2)** |

## ORDER & REASONS

### I. BACKGROUND

This case arises out of alleged personal injuries and property damages that resulted from alleged exposure to naturally occurring radioactive material ("NORM"), also known as technologically enhanced radioactive materials ("TERM"), as part of oil operations by various pipe-cleaning defendants. In addition to the pipe-cleaning defendants, Plaintiffs name the landowners who owned the land upon which the pipe-cleaning operations were conducted and oil companies as defendants. The Petition asserts claims by approximately 465 Plaintiffs who originally filed their claims in the Civil District of Orleans Parish on March 5, 2014. Defendant Transco Exploration Co. removed this case to federal court pursuant to the Class Action Fairness Act. (Rec. Doc. 1).

The Petitioners are all present or former residents of Jefferson Parish and have all, at some point, worked or lived in the area near "Grefer Tract,"[1] the land at issue. (Rec. Doc. 1-1 at 9). From 1953 until 1992, the property was leased to clean, maintain, and repair used oil field pipes and equipment. (Rec. Doc. 1-1 at 9). Plaintiffs allege that the "oil field equipment and pipes were and continue to be contaminated with highly toxic materials, hazardous, carcinogenic, and poisonous" and that this contaminated the Grefer Tract. (Rec. Doc. 1-1 at 10). Plaintiffs contend that the property contamination also contaminated the air, land, ground water, top soil,

---
[1] The "Grefer Tract" refers to 33 acres of industrial property owned by the Grefer Family.

subsoils, food, neighborhoods, and that "petitioners have become infested with these highly toxic hazardous chemicals, toxicants, and pollutants." (Rec. Doc. 1-1 at 10). Plaintiffs allege that at all times, Defendants knew or should have known that the oil pipes were contaminated. (Rec. Doc. 1-1 at 11). Plaintiffs allege that the contamination was caused by the "negligence, wanton conduct, breach of duty, deceit, and intentional misrepresentation of the defendants." (Rec. Doc. 1-1 at 12).

The Plaintiffs brought claims against twenty-eight Defendants but have settled with most Defendants, leaving only two Defendants in the case: ExxonMobil and Intracoastal Tubular, Inc. ("Intracoastal"). Plaintiffs filed a Second Supplemental Amended Complaint on December 23, 2015 and allege, in addition to their personal injury claims, that ExxonMobil and Intracoastal Tubular Co. entered into a settlement agreement in *Dottie Adams et al. v. Joseph Grefer et al.* ("*Dottie Adams*")[2] and that Defendants breached that settlement agreement. (Rec. Doc. 76 at 1).

As background to the settlement agreement, on October 11, 2005, *Dottie Adams* was filed on behalf of roughly 1,205 claimants who asserted personal injuries allegedly caused by exposure to NORM, TERM, and other toxic and or hazardous materials as a result of the Defendants' operations in the Grefer Tract. On November 27, 2007, the 24th JDC granted Plaintiff's Motion for Leave and First Supplemental and Amended Petition, bringing the total number of plaintiffs in the *Dottie Adams* lawsuit to approximately 4,322. (Rec. Doc. 92-3).

### A. ExxonMobil's *Dottie Adams* Settlement and Subsequent Events

Although the Court summarized these events in its Order & Reasons (Rec. Doc.117), it is appropriate to recall those events here. In 2008, ExxonMobil and the *Dottie Adams* plaintiffs reached a settlement. Counsel for ExxonMobil summarized this Agreement in a letter ("Letter

---

[2] 24th Judicial District Court ("JDC"), Parish of Jefferson, No. 624-278, Div. "K."

Agreement")[3], dated February 14, 2008, to lead Plaintiffs' counsel, Grover G. Hankins.  Under the Agreement, Plaintiffs' recovery would be based on a point system.  The letter stated:

> The application of the points system below will apply to pay individual settlement amounts to all *Dottie Adams* plaintiffs listed in the original and amended petitions filed in the 24th Judicial District Court for the Parish of Jefferson, Louisiana, that meet the criteria to receive a settlement as stated above.
>
> As a basis to reach this agreement in principle, counsel for plaintiffs in the *Dottie Adams* case have stated to ExxonMobil that they have been retained as the sole legal counsel to represent the interests of the *Dottie Adams* plaintiffs listed in the original and all amended petitions and that they have the authority to bind each of the *Dottie Adams* plaintiffs listed in the original and all amended petitions to settle their individual claims based on the point system set forth below.  ExxonMobil agrees to pay additional claimants that become plaintiffs in the *Dottie Adams* case in the future using this point system, provided said claimants meet the settlement criteria set forth above.

(Rec. Doc. 78-2 at 2).

Pursuant to the Letter Agreement, and Plaintiffs do not dispute this point, ExxonMobil paid approximately $8,200,000 to 2,004 claimants.  (Rec. Doc. 96 at 6).  Of those 2,004 individuals who received settlement payments under the terms of the Letter Agreement, approximately 1,691 were *Dottie Adams* Plaintiffs on February 14, 2008, the day the Letter Agreement was executed, and 313 individuals were "new" claimants.  These 313 individuals constituted claimants who were *not* named plaintiffs in the *Dottie Adams* lawsuit, but ExxonMobil entered a settlement agreement with them pursuant to the Letter Agreement's settlement terms and calculated those settlement amounts based on the Letter Agreement's point system.

---

[3] In the Court's prior Order & Reasons, Rec. Doc. 117, the Court referred to the Letter Agreement as the Agreement.  Since Plaintiffs' motion disputes whether the Letter Agreement constitutes the full settlement, the Court will now refer to the agreement set forth in the February 14, 2008 letter as the "Letter Agreement."

ExxonMobil claims that in or around June 2008, Plaintiffs' counsel provided ExxonMobil with a list of an additional 1,000 claimants, most of whom were not named in the *Dottie Adams* suit. This list eventually swelled to over 1,700 claimants, and Plaintiffs' counsel claimed that those claimants were entitled to the terms of the Letter Agreement despite the fact that they were not named plaintiffs in the *Dottie Adams* suit. According to ExxonMobil, Plaintiffs' counsel demanded that ExxonMobil pay an additional $4.2 million in settlement money for these "new" claimants. Plaintiffs do not exactly dispute this contention, as their memorandum states: "Exxon, despite repeated requests, subsequently refused to pay the remainder of the "new" claimants." (Rec. Doc. 85-1 at 2). ExxonMobil refused to settle with these "new" claimants.[4]

Plaintiffs' counsel consequently filed a number of motions for leave to amend the *Dottie Adams* petition, seeking to formally add these "new" claimants as *Dottie Adams* plaintiffs. ExxonMobil and other Defendants opposed these motions for leave. On May 23, 2011, the 24th JDC denied the Motion for Leave to File a 2nd Supplemental and Amending Petition. (Rec. Doc. 92-9). On April 1, 2013, Plaintiffs' counsel filed a Motion for Leave to file a 3d Supplemental and Amended Petition. (Rec. Doc. 92-10). On June 25, 2013, Plaintiff's counsel filed a Motion for Leave to file a 4th Supplemental and Amending Petition and sought to add an additional 1,750 claimants as *Dottie Adams* Plaintiffs. (Rec. Doc. 92-11). On September 30, 2013, Plaintiffs' counsel filed a Motion for Leave to file a 4th Supplemental Petition. (Rec. Doc. 92-12). On October 9, 2013, Plaintiffs' counsel filed a Motion for Leave to file a 3rd Supplemental and Amending Petition (Rec. Doc. 92-13), a Motion for Leave to File a Supplemental and Amending Petition to Fourth Supplemental Petition (Rec. Doc. 92-14), and a Motion for Leave to File a

---

[4] For the remainder of this memorandum, "new" claimants shall refer to those claimants who were not *Dottie Adams* plaintiffs as of February 14, 2008 and never became *Dottie Adams* plaintiffs.

Fifth Supplemental Petition (Rec. Doc. 92-15).  On October 18, 2013, two of ExxonMobil and Intracoastal's co-defendants filed oppositions to Plaintiffs' motions for leave to file supplemental and amending petitions.  In one opposition, a defendant noted that Plaintiff was seeking to add 1,752 new parties to the lawsuit.  (Rec. Doc. 92-17 at 1).  On October 24, 2013, ExxonMobil filed an opposition to the pending motions for leave to file supplemental and amending petitions.  (Rec. Doc. 92-18).

On October 28, 2013, the 24th JDC denied all of Plaintiffs' pending motions for leave to file amending and supplemental petitions.  (Rec. Doc. 92-19 & 92-20).  This denial effectively barred any additional claimants from becoming *Dottie Adams* plaintiffs.

## II.    PROCEDURAL HISTORY

On February 9, 2015, Plaintiffs filed a Motion to Enforce the Settlement Agreement. (Rec. Doc. 85).  Exxon-Mobil opposed the motion on March 10, 2015.  (Rec. Doc. 96). Plaintiffs, with leave of the Court, filed a reply on March 16, 2015.  (Rec. Doc. 102).  The Court heard oral argument on the motion on March 24, 2015.  During oral argument, Plaintiffs produced new exhibits and raised a new legal argument based on detrimental, so the Court granted Exxon-Mobil ten (10) days to brief the new evidence and argument.  Exxon-Mobil filed an opposition on April 2, 2015.  (Rec. Doc. 108).  Plaintiffs' counsel contacted the Court and indicated that they wished to file a reply to Exxon-Mobil's response but required additional time because Plaintiffs' counsel had experienced technical difficulties with his computer.  (Rec. Doc. 113).  Plaintiffs filed their reply on April 14, 2015.  (Rec. Doc. 116).

Armed with five briefs and oral argument on the issue, the Court issued an Order & Reasons denying Plaintiffs' Motion to Enforce the Settlement Agreement.  (Rec. Doc. 117).  The Court found that the Letter Agreement was clear and unambiguous and could therefore not

consider parol evidence, such as an oral modification or performance of the parties. (Rec. Doc. 117 at 12-13). Looking to the unambiguous language, the Court determined that the Plaintiffs did not satisfy the Letter Agreement's conditions and thus could not enforce the Letter Agreement. (Rec. Doc. 117 at 13-4). The Court rejected Plaintiffs' argument that Exxon-Mobil's performance, by paying 313 "new" claimants, indicated that such new claimants fell within the purview of the contract because such performance constituted parol evidence and the Court cannot look to such evidence for contract interpretation. (Rec. Doc. 117 at 14-15). Finally, the Court rejected Plaintiffs' detrimental reliance claim because the Letter Agreement constituted an enforceable contract and Louisiana Law requires a settlement agreement to be in writing to be enforceable. (Rec. Doc. 117 at 16).

### III. PRESENT MOTION

#### A. Plaintiffs' Motion for Reconsideration (Rec. Doc. 119)

Plaintiffs filed a Motion for Reconsideration of the Court's Order & Reasons denying Plaintiffs' Motion to Enforce the Settlement Agreement. (Rec. Doc. 119). Plaintiffs argue that the Court misinterpreted Plaintiffs' argument because "Plaintiffs have never asserted that the [ ] Agreement was modified by a subsequent and valid 'oral agreement.'" (Rec. Doc. 119-1 at 2). Instead of a modification, Plaintiffs contend that the "ultimate issue" before the Court is whether an Agreement can be evaluated by the performance of the parties. While Plaintiffs concede that a settlement must be in writing to be enforceable, Plaintiffs contend that the Court can look to the parties' performance as part of the Agreement." (Rec. Doc. 119-1 at 3). Further, Plaintiffs contend that "evidence of how the contract was actually performed is not extrinsic to the contract, but rather, it is essential to the Court's evaluation since the payment of Non-Dottie Adams Plaintiffs was inconsistent with the provisions within the four corners of the Agreement

regarding non-Dottie Adams Plaintiffs.  (Rec. Doc. 119-1 at 4).  Plaintiffs also argue that the Release documents signed by the "new" claimants signify a written modification of the agreement.  Finally, Plaintiffs argue that Exxon-Mobil's contention that it voluntarily paid the "new" claimants constitutes parol evidence, and the Court should therefore not have considered it when it interpreted the contract.  Plaintiffs also aver that

> [t]he Defendant's citing of cases to the Court regarding 'oral modifications' of contracts required to be in writing is a classic 'red herring' intended to confuse the Court, cloud the true issues, and distract the Court from the ultimate issue of whether Defendants' performance of the contract by paying and obtaining written releases from non-Dottie Adams Claimant's, over a 2-year period, indicates the intent of the 2008 Settlement Agreement.

(Rec. Doc. 119-1 at 6).

### B.  Exxon-Mobil's Opposition (Rec. Doc. 123)

Exxon-Mobil opposes the motion and argues that Plaintiffs do not satisfy the Motion for Rehearing standard as outlined in Rule 59(e) because Plaintiffs merely rehash prior evidence and legal theories.  (Rec. Doc. 123 at 11).  Specifically, Exxon-Mobil contends that Plaintiffs put forth the arguments they already asserted, including: (1) the argument that the agreement was subsequently modified by performance; (2) subsequent modifications do not have to be in writing; and (3) that Exxon-Mobil did not "voluntarily" pay the "new" claimants.  (Rec. Doc. 123 at 3-4).  In response to Plaintiffs' argument that the Release documents modified the Agreement, Exxon-Mobil avers:

> (1) that argument only rehashes Plaintiffs' rejected argument that ExxonMobil's settling with non-Dottie Adams plaintiffs somehow modified the settlement agreement with Dottie Adams plaintiffs; (2) the settlement agreement and the closing documents are not new evidence; and (3) Plaintiffs could have offered or raised this argument before this Court's ruling on April 20, 2015.

7

(Rec. Doc. 123 at 4).  In response to Plaintiffs' argument that they never asserted that the Agreement was modified by a subsequent oral modification, Exxon-Mobil cites sixteen instances in Plaintiffs' briefs and during oral argument where Plaintiffs raised the issue of a mutually agreed-to oral modification.  (Rec. Doc. 123 at 8).  Finally, Exxon-Mobil ardently disputes Plaintiffs' assertions that it has "made material misrepresentations as to the motivations and actions surrounding the alleged 'voluntary' settlement with and payment of 313 non-Dottie Adams plaintiffs."  (Rec. Doc. 123 at 10).

### C.  Plaintiffs' Supplemental Memorandum (Rec. Doc. 126)

Plaintiffs filed a Supplemental Memorandum in support of their Motion and argue that the closing documents for each settling claimant control and supersede the letter agreement.  (Rec. Doc. 126 at 2).  Plaintiffs argue these closing documents do not exclude claimants who have not been enrolled as *Dottie Adams* Plaintiffs, as the "Lawsuit" definition of the Release Document specifically includes "claims made in other suits, actions, or claims related directly or indirectly to the incident which may have been or may be filed by or on behalf of any or all of the Claimants."  (Rec. Doc. 126 at 7).  Further, for the first time, Plaintiffs contend that the 2008 Agreement is *not* a settlement agreement because consideration and performance are not outlined in the Agreement.   Rather, the Letter Agreement and Closing Document comprise the Settlement Agreement.  (Rec. Doc. 126 at 7).

### D.  Plaintiffs' Reply (Rec. Doc. 129)

Plaintiffs also reply to Exxon-Mobil's Opposition and contend that Exxon-Mobil's Opposition consists entirely of doublespeak.  Plaintiffs contend that "Defendant's attempt to impose the standards of Rule 59 which applies to post judgment motions for new trial is more doublespeak and diversion."  (Rec. Doc. 129 at 3).  Plaintiffs argue that their motion for

rehearing is to correct the Court's confusion that Plaintiffs' argument was based on an oral modification; Plaintiffs rather contend that that the parties modified the contract by performance. (Rec. Doc. 129 at 4).  Finally, Plaintiffs again aver that Exxon-Mobil did not voluntarily pay the "new" claimants, as the Closing Documents superseded the Letter Agreement.

### IV.  LAW AND ANALYSIS

#### A.  The Standard

Federal Rule of Civil Procedure 54(b) provides that any non-final order "may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities."  Thus, the Fifth Circuit has held that "[a]s long as a district ... court has jurisdiction over the case, then (in absence of prohibition by statute or rule), it possesses the inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient."  *Melancon v. Texaco, Inc.*, 659 F.2d 551, 553 (5th Cir. 1981).  "Although the precise standard for evaluating a motion to reconsider under Rule 54(b) is unclear, whether to grant such a motion rests within the discretion of the court."  *Dos Santos v. Bell Helicopter Textron, Inc.*, 651 F. Supp. 2d 550, 553 (N.D. Tex. 2009).  "[T]he standard would appear to be less exacting than that imposed by Rules 59 and 60," although "considerations similar to those under Rules 59 and 60 inform the Court's analysis." *Id.* (citation omitted).  "[T]he general practice of this court has been to evaluate motions to reconsider interlocutory orders under the same standards that govern Rule 59(e) motions to alter or to amend a final judgment." *Castrillo v. Am. Home Mortgage Serv., Inc.*, 2010 WL 1424398, at *3 (E.D. La. Apr. 5, 2010).  Courts in the Eastern District of Louisiana have generally considered four factors in deciding a motion under the Rule 59(e) standard: (1) the motion is necessary to correct a manifest error of law or fact upon which the judgment is based; (2) the movant presents newly discovered or previously

unavailable evidence; (3) the motion is necessary in order to prevent manifest injustice; or (4) the motion is justified by an intervening change in controlling law. *Southern Snow Mfg. Co., Inc. v. SnoWizard Holdings, Inc.*, 921 F. Supp.2d 548, 566 (E.D. La. 2013).

"A Rule 59(e) motion should not be used to re-litigate prior matters that...simply have been resolved to the movant's dissatisfaction." *Voisin v. Tetra Technologies, Inc*., 2010 WL 3943522, at *2 (E.D. La. Oct. 6, 2010). "[R]econsideration of an earlier order is an extraordinary remedy, which should be granted sparingly." *Equip. Leasing, LLC v. Three Deuces, Inc.*, 2011 WL 4965501, at *2 (E.D. La. Oct. 19, 2011). "To succeed on a motion for reconsideration, a party must clearly establish a manifest error of law or fact or must present newly discovered evidence." *Id.* (quotation omitted). "When there exists no independent reason for reconsideration other than mere disagreement with a prior order, reconsideration is a waste of judicial time and resources and should not be granted." *Southern Snow Mfg. Co., Inc.,* 921 F. Supp.2d at 566.

### B. Plaintiffs' Modification by Performance

Plaintiffs argue that this Court should reconsider its prior ruling because it misconstrued Plaintiffs' modification argument as one based on an oral modification and not a modification based on the parties' performance. This argument does not meet the exacting standard as described above, as the Court considered and ruled on Plaintiffs' argument that the parties modified the contract through performance. The Court concedes that it couched the discussion in terms of an oral modification, but that discussion applied to modification by performance, as evidenced by the section title, "ExxonMobil Modified the Contract through Payment to 'New Claimants.'" Further, the Court properly held that Exxon-Mobil's payments to new claimants did not constitute a modification to the written Letter Agreement because any modification to a

settlement agreement must be in writing pursuant to Louisiana Law.  La. Civ. Code Art. 3072.  As one Louisiana court summarized, "[w]here compromises and settlements are concerned, modifications of written contracts *must be in writing*."  *Wortham v. Fielder*, 711 So.2d 399, 401 (La. App. 2 Cir. 1998).  *See also Braun Welding Supply, Inc. v. Praxair, Inc.*, 654 So. 2d 388, 392 (La App. 3 Cir. 1995) ("While under general contract law oral modifications of written contracts are permitted, this is not the case where compromises and settlements are concerned. In the latter case any modifications must also be in writing.").  The Court therefore correctly held that *any* modification to the Letter Agreement must be in writing, so Plaintiffs' argument that the parties modified the settlement through performance fails.

### C.  Court Should Interpret Contract Terms based on ExxonMobil's Performance

Plaintiffs' argument that the Court should interpret the contract based on the parties' performance also fails because the Court explicitly rejected this argument in its prior Order & Reasons.  Specifically, the Court analyzed this argument on pages 13-14 of the Order & Reasons and stated that because the contract is unambiguous, the Court cannot look to the parties' performance to interpret the contract because such performance constitutes inadmissible parol evidence.  (Rec. Doc. 117 at 13-14).  In re-urging this argument, Plaintiffs do not demonstrate why the Court should cast aside a bedrock of Louisiana contract law and look to parol evidence for contract interpretation when the contract is unambiguous.  More importantly, Plaintiffs' simply rehash the same argument and do not satisfy the high standard for reconsideration.

### D.  Individual Release Documents

Plaintiffs' supplemental motion argues that the individual Release Documents or Closing Documents should be read with the Letter Agreement to comprise the Settlement Agreement, and since the definition for "Lawsuit" in the Release includes those related suits not yet filed, the

Plaintiffs qualify as claimants under the Letter Agreement. This argument fails. First, this evidence does not constitute "newly discovered or previously unavailable evidence," as Plaintiffs had access to these documents well before they filed their Motion to Enforce the Settlement Agreement. *Southern Snow Mfg. Co., Inc.,* 921 F. Supp.2d at 566. These documents thus do not compel the Court to reconsider its prior ruling.

Second, the Court finds that this evidence would not change its prior ruling. While the Letter Agreement and the Release Documents and Closing Letter should be considered as the settlement for the signatory claimant, i.e. the individual claimant who signs the release, the clear terms of the Release indicates that the definition of "Lawsuit" only applies to the Release. The introduction to the "Definitions" of the Release states: "[t]he following terms, *as used in this "Receipt, Release, and Indemnity Agreement,"* shall be given the following meanings." (Rec. Doc. 126 at 10) (emphasis added). The definition of "Lawsuit" in the Release thus does not supersede the definition of claimant in the Letter Agreement. In sum, the documents put forth by Plaintiff do not compel the Court to reconsider its prior ruling because the documents do not signify new evidence, and regardless, the definition of "Lawsuit" in the Release only applies to the Release and does not affect the Court's prior interpretation of who qualifies as a claimant under the Letter Agreement.

## V.  CONCLUSION

In sum, Plaintiffs' arguments do not satisfy the Rule 54(b) standard. Accordingly, **IT IS ORDERED** that Plaintiffs' Motion for Reconsideration is (Rec. Doc. 119) is **DENIED**. The Court will contact the parties to schedule a status conference to discuss a scheduling order.

New Orleans, Louisiana this 2nd day of June, 2015.

_____
UNITED STATES DISTRICT JUDGE